NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EDGAR ACUNA-VIALES,

Plaintiff,

v.

TIMOTHY PASQUALE, *et al*

Defendants.

Civil No. 24-1048 (GC)(RLS)

**OPINION**

**CASTNER, District Judge**

**THIS MATTER** comes before the Court on Plaintiff Edgar Acuna-Viales' Amended Complaint (D.E.'s 15, 16, "Am. Compl."), filed on March 7 and March 18, 2025. On July 2, 2024, the Court granted Plaintiff's application to proceed *in forma pauperis* and screened the original Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), dismissing all claims. (D.E.'s 3, 4.) Some claims were dismissed with prejudice—the 42 U.S.C. § 1983 damages claims against the State of New Jersey, the injunctive relief claim seeking release or sentence modification, and the § 1983 claims against Judge Julie M. Marino—and the remaining claims were dismissed without prejudice as time-barred, with leave to amend. (*Id.*) Following an interlocutory appeal that the Third Circuit dismissed for lack of jurisdiction (D.E. 11), Magistrate Judge Singh granted Plaintiff an extension of time to file the Amended Complaint (D.E. 14), which Plaintiff timely filed. The Court now screens the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

For the reasons set forth below, the Court will permit certain constitutional claims to proceed against Detective Timothy Pasquale, Robert Wood Johnson Hospital, Somerset County and its personnel, and Sergeant Garcia, and will dismiss the remaining claims as set forth herein.

## I.    BACKGROUND[1]

Plaintiff is a Costa Rican citizen and lawful permanent resident of the United States who, at the time of the events alleged, operated two landscaping and cleaning businesses in Somerville, New Jersey, employed approximately twenty-two workers, and maintained a clean criminal record. (Am. Compl., D.E. 15 at 31.)  Plaintiff alleges that he was arrested by Detective Timothy Pasquale of the Somerville Police Department and another officer, Detective Alvarez, on May 12, 2020, at 341 Marion Street, Union, New Jersey, without a warrant, without being read his Miranda rights, and without being permitted to contact his attorney or family.  (*Id.* at 2.)  Plaintiff further alleges that at the time of the arrest, the Somerset County courts were closed due to the COVID-19 pandemic and that no judge was available to sign orders.  (*Id.* at 31.)

During the arrest, Plaintiff alleges that Pasquale and Alvarez removed from his person his cell phone, passport, social security card, permanent residency card, and the title to a trailer—the estimated total value of which Plaintiff places at $8,100—without a warrant or his consent.  (*Id.* at 7.)  Weeks after the arrest, Plaintiff further alleges that Pasquale entered Plaintiff's apartment at #1 Brookside Avenue, Apt. #6B, Somerville, New Jersey, without a warrant, without Plaintiff's consent, and in Plaintiff's absence, and removed Plaintiff's security camera system (a Cobra DVR unit valued at $700), a photo camera valued at $150, and two USB drives that Plaintiff contends

---

[1]    The Court notes that the Am. Compl. contains internal pagination; however, that pagination is inconsistent and, at times, illegible. Accordingly, for clarity and ease of reference, the Court cites to the pagination generated by the Court's CM/ECF system when referring to page numbers.

contained evidence in his favor and were subsequently used against him. (*Id.* at 7.) Plaintiff also alleges that Pasquale and the Assistant Prosecutor were aware of video evidence on Plaintiff's phone showing an alleged attempted assassination of Plaintiff by his former wife, Hana Gomes, and that Pasquale suppressed this evidence rather than reporting or investigating it. (*Id.* at 4.)

On May 12, 2020, Pasquale transported Plaintiff to the Somerville Police Station, where Pasquale administered a buccal DNA test without a judge's order, without Plaintiff's consent, and without an attorney present. (*Id.* at 3.) On the same day, Pasquale directed a Somerville Police officer to transport Plaintiff to Robert Wood Johnson Hospital at Somerset ("RWJ") without a judge's order and without Plaintiff's consent. (*Id.* at 3, 11.) Plaintiff alleges that he was conscious and coherent upon admission, had no accidents, wounds, or mental health crisis, and had not exhibited suicidal behavior. (*Id.* at 12.) Hospital staff restrained Plaintiff's hands and feet to a hospital bed in handcuffs for four days and denied him the ability to contact family, friends, an attorney, or a judge for more than ninety-four hours. (*Id.* at 12, 14.) Hospital personnel did not provide Plaintiff his prescribed thyroid medication for the duration of his stay and, without a valid prescription, gave Plaintiff psychiatric medication—specifically haloperidol (Haldol)—which he refused upon discovering it was not for his thyroid condition. (*Id.* at 13.) Hospital staff also compelled Plaintiff to sign documents in English without providing a translator, notwithstanding his inability to read or write English. (*Id.*) Somerville Police officers and Somerset County Jail correctional officers were present at Plaintiff's bedside throughout his hospitalization and rotated shifts. (*Id.* at 15-16.) Plaintiff was discharged from RWJ on May 16, 2020, and transferred to Somerset County Jail. (*Id.* at 32.)

At Somerset County Jail, Plaintiff was placed in a medical observation cell for six days without his consent. (*Id.* at 22.) He was denied all communication with family, friends, and

3

counsel for over 120 hours and was not brought before a judge within that period. (*Id.* at 22.) He was later transferred to a COVID-19 quarantine unit for seven days, during which the jail controlled his access to the telephone system and withheld his telephone contacts. (*Id.* at 23.)

On August 31, 2020, the State filed a motion—supported by an order later signed by Judge Anthony F. Picheca, Jr.—to compel Plaintiff to submit to a second buccal DNA test. (*Id.* at 46.) The order provided that defense counsel would be present during the test. (*Id.*) On September 10, 2020, Pasquale and another detective arrived at Somerset County Jail to administer the test. (*Id.* at 37.) Plaintiff's attorney, Anthony Cowell, was not present. (*Id.*) Plaintiff refused on that basis. Sergeant Garcia of the Somerset County Correctional Facility purportedly threatened Plaintiff, stating that if he refused the test, he would face a third-degree charge and receive a sentence of one year and six months, and also threatened that he would hang Plaintiff by his feet in a cell. (*Id.* at 24, 37.) A female correctional officer held Plaintiff by the shoulders and forced him into a chair while Pasquale administered the DNA test without Plaintiff's consent and without his attorney present. (*Id.*) Plaintiff alleges that these events were recorded on video camera. (*Id.* at 37.)

Throughout Plaintiff's pretrial detention from May 2020 to approximately September 2022, Plaintiff alleges that Somerset County Jail: prohibited him from accessing the law library for over two years; denied him access to § 1983 complaint forms or paralegal assistance; operated only three telephones for forty inmates; cancelled phone recreation, religious services, and family visits on multiple occasions citing COVID-19 as justification; maintained outdated video conference equipment that impeded his ability to hear court proceedings; placed him in a disciplinary unit on two occasions in late 2021—once for five days following a psychiatric observation placement and again for ten days following his COVID-19 infection—each time without notice, cause, or investigation; and exposed him to COVID-19 in November 2021 by

4

knowingly housing an infected inmate in Plaintiff's unit while denying him medical treatment and instead placing him in a disciplinary segregation unit. (*Id.* at 22-27.)

Plaintiff retained private counsel Michael Policastro in May 2021 for an agreed fee of $5,000. (*Id.* at 40.) Plaintiff alleges Policastro failed to visit him in jail, failed to answer phone calls for over a year, filed no motions, examined no witnesses, and met privately with prosecution witnesses without Plaintiff's consent. (*Id.* at 41-45.) At a video court conference on January 5, 2022, Policastro allegedly provided information about those unauthorized meetings to Judge Michael Rojers and Prosecutor Mueller in open court, argued against Plaintiff's position, and threatened to abandon the case if Plaintiff did not accept a plea offer. (*Id.* at 43.) Plaintiff ultimately accepted a plea on or about March 2022 and was sentenced by Judge Julie M. Marino on September 23, 2022. (*Id.* at 45.)

## II.     STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 (Apr. 26, 1996), district courts must review prisoner complaints when the prisoner proceeds *in forma pauperis.* 28 U.S.C. § 1915(e)(2)(B). The PLRA requires courts to *sua sponte* dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* The standard for dismissal under § 1915(e)(2)(B)(ii) is the same as that applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). A complaint survives dismissal if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court accepts all well-pleaded facts as true, draws all reasonable inferences in the plaintiff's favor, and reads the complaint liberally. *Shorter v.*

*United States*, 12 F.4th 366, 374 (3d Cir. 2021). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Plaintiff proceeds *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A.   Claims Dismissed with Prejudice in Prior Opinion

The Court's July 2, 2024 Opinion dismissed the following claims with prejudice: (1) § 1983 damages claims against the State of New Jersey, because the State is not a "person" under § 1983, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); (2) the § 1983 injunctive relief claim seeking release or a shorter sentence, which must be pursued through a habeas petition under 28 U.S.C. § 2254, *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005); and (3) § 1983 claims against Judge Marino arising from her conduct at Plaintiff's sentencing on the basis of absolute judicial immunity, *Mireles v. Waco*, 502 U.S. 9, 11 (1991). The Amended Complaint does not reassert direct claims against the State of New Jersey or Judge Marino, and to the extent any allegations implicitly seek release from incarceration or modification of Plaintiff's sentence, those requests remain barred in this action and are dismissed.

### B.   Equitable Tolling

The two-year statute of limitations applicable to § 1983 claims in New Jersey, N.J. Stat. Ann. § 2A:14-2, would ordinarily bar most of Plaintiff's claims, which arise from events in 2020 and 2021, given that the original Complaint was filed on February 22, 2024. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Coello v. DiLeo*, 43 F.4th 346, 352 (3d Cir. 2022). The Court previously dismissed those claims without prejudice, expressly inviting Plaintiff to plead facts supporting equitable tolling. (ECF No. 3 at 7.) The Amended Complaint now does so.

6

In New Jersey, equitable tolling applies, *inter alia,* where a plaintiff "in some extraordinary way [has] been prevented from asserting his rights." *Hernandez v. Montoya,* 636 F. Supp. 3d 511, 517 (D.N.J. 2022). Plaintiff alleges five distinct circumstances that together plausibly constitute such extraordinary prevention: (1) from May 2020 through approximately mid-2022, he was confined under strict COVID-19 quarantine protocols that locked him in his cell for close to two years, permitted only ten minutes per day for showers, and cancelled all privileges including phone time and recreation using COVID-19 as justification; (2) Somerset County Jail had no § 1983 forms and no paralegals available to assist with legal filings; (3) the law library was closed on multiple occasions—and for extended periods totaling more than two years—citing COVID-19, and when Plaintiff was finally permitted access after sentencing, it was only on three occasions for thirty minutes each, and the library lacked any forms, remedies, or materials needed to file in federal court; (4) the jail controlled the telephone system, withheld Plaintiff's telephone contacts, and denied him communication with counsel or family for prolonged periods; and (5) Plaintiff is a Costa Rican citizen who cannot read or write English, rendering him unable to independently research and understand applicable legal deadlines and procedures. (Am. Compl. at 28-29.)

At the pleading stage, dismissal on limitations grounds is appropriate only where the time bar is "obvious from the face of the complaint and no development of the record is necessary." *Ostuni v. Wa Wa's Mart,* 532 F. App'x 110, 111-12 (3d Cir. 2013). Plaintiff's detailed allegations of COVID-era lockdown conditions, systematic denial of law library access, unavailability of legal forms, language barrier, and phone system manipulation present questions that cannot be resolved without a developed factual record. The Court therefore finds that Plaintiff has adequately pled equitable tolling for screening purposes and does not dismiss the surviving claims on timeliness

7

grounds at this time. Defendants may raise the limitations defense in an appropriate motion after service.

### C. *Claims Against Detective Timothy Pasquale*

Plaintiff raises several categories of constitutional claims against Pasquale in his individual capacity under § 1983.

First, Plaintiff alleges that Pasquale arrested him on May 12, 2020 without a warrant and without probable cause. A warrantless arrest violates the Fourth Amendment where the arresting officer lacks probable cause to believe that an offense has been committed. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020). Accepting Plaintiff's allegations as true, Plaintiff has stated a plausible false arrest claim. This claim may proceed.

Plaintiff also alleges that Pasquale failed to advise him of his Miranda rights before and during the arrest. The Court notes that a bare failure to administer Miranda warnings does not, standing alone, give rise to a cognizable § 1983 damages claim. *Vega v. Tekoh*, 597 U.S. 134, 140-41 (2022) (holding that a violation of *Miranda v. Arizona* does not constitute a violation of the Fifth Amendment cognizable under § 1983). The remedy for an unwarned statement is suppression at trial, not a standalone civil damages action. Accordingly, to the extent Plaintiff asserts a freestanding § 1983 claim predicated solely on the failure to administer Miranda warnings, that claim is dismissed with prejudice. Nothing in this ruling precludes Plaintiff from asserting, in appropriate post-conviction proceedings, that any unwarned statements were improperly used against him.

Second, Plaintiff alleges that at the time of his arrest Pasquale seized his cell phone, passport, social security card, permanent residency card, and a trailer title—and weeks later

8

entered his apartment without a warrant and removed his security camera system, a photo camera, and two USB drives—all without consent or judicial authorization. The Fourth Amendment protects against unreasonable warrantless seizures of personal property. *Soldal v. Cook County*, 506 U.S. 56, 61-62 (1992). The warrantless entry into and search of the apartment likewise states a *per se* Fourth Amendment violation absent an applicable exception. *See Payton v. New York*, 445 U.S. 573, 586 (1980). These claims may proceed.

Third, Plaintiff alleges that Pasquale administered a buccal DNA test on May 12, 2020 at the Somerville Police Station without a warrant, without Plaintiff's consent, and without an attorney present. A nonconsensual, warrantless extraction of a DNA sample implicates the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 770-71 (1966). This claim may proceed.

Fourth, with respect to the second buccal DNA test on September 10, 2020, the Court notes that a judicial order signed by Judge Picheca on August 31, 2020 authorized that test. (Am. Compl. at 46.) However, the order expressly provided that defense counsel would be present, and Plaintiff's attorney was absent. Moreover, Plaintiff alleges that Pasquale, acting in concert with Sergeant Garcia, obtained the sample through threats, intimidation, and physical coercion. The existence of a court order does not insulate officers from liability where they allegedly exceed the scope of that order or execute it in an unreasonable or coercive manner. See *Estate of Smith v. Marasco*, 318 F.3d 497, 505–06 (3d Cir. 2003) (qualified immunity does not apply where officers violate clearly established constitutional rights); *United States v. Tracey*, 597 F. App'x 249, 253–54 (3d Cir. 2016) (execution of judicial authorization must remain within its scope and comply with the Fourth Amendment's reasonableness requirement); *Schmerber*, 384 U.S. 757, 768–72 (bodily intrusions constitute searches that must be reasonable in both justification and manner of execution); *United States v. Mitchell*, 652 F.3d 387, 403–06 (3d Cir. 2011) (*en banc*) (buccal swab

9

is a search subject to Fourth Amendment reasonableness analysis). Courts in this district likewise recognize that valid authorization does not permit unconstitutional execution of a search or seizure. *See Hodges v. Stanley*, No. 15-3473, 2017 WL 1208423, at \*6–7 (D.N.J. Mar. 30, 2017) (officers may be liable under § 1983 for unreasonable or excessive execution of otherwise authorized search). Accordingly, Plaintiff states a plausible Fourth Amendment and due process claim arising from the manner in which the second DNA test was administered, and this claim may proceed.

Fifth, Plaintiff alleges that Pasquale was aware of and suppressed video evidence on Plaintiff's cell phone showing an alleged attempted assassination of Plaintiff by his former wife, Hana Gomes. There is no freestanding constitutional right to have police investigate a crime committed against a plaintiff or to require that law enforcement report or act upon exculpatory evidence in a civil rights context. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005). This "criminal complicity of evidence" claim is dismissed without prejudice. To the extent Plaintiff asserts a claim based on Defendants' alleged failure to investigate or act upon exculpatory evidence, such a theory is not independently cognizable under § 1983 absent allegations that the conduct caused the initiation or continuation of a prosecution without probable cause.

## D. Claims Against Robert Wood Johnson Hospital

RWJ is a private entity and is therefore not ordinarily subject to liability under § 1983. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Liability may nonetheless attach where a private party is fairly deemed a state actor by virtue of joint participation with state officials or conduct otherwise fairly attributable to the State. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

The Court of Appeals for the Third Circuit applies this principle through the "joint action" framework, under which a private entity may be deemed to act under color of state law where it is

10

a willful participant in coordinated activity with state actors that results in a constitutional deprivation. *Cruz v. Donnelly*, 727 F.2d 79, 81–82 (3d Cir. 1984); *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 195–96 (3d Cir. 2005). At the pleading stage, Plaintiff must allege facts sufficient to support a reasonable inference of agreement or coordinated conduct; conclusory allegations of parallel conduct or cooperation do not suffice. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010).

Measured against that standard, Plaintiff's allegations are sufficient at screening to support a plausible inference that RWJ acted jointly with state actors. Plaintiff alleges that on May 12, 2020, he was transported to RWJ by Somerville police officers without judicial authorization or his consent. (Am. Compl. at 11–12.) He further alleges that during his four-day hospitalization, Somerville police officers and Somerset County correctional officers maintained continuous physical presence at his bedside, rotating custody and exercising ongoing supervisory control over his confinement within the hospital setting. (*Id.* at 12–16, 18, 20.) Plaintiff also alleges that his hospitalization functioned as a *de facto* custodial detention during a COVID-19–disrupted arrest and pre-arraignment process, during which judicial availability was limited, and law enforcement coordinated the timing and conditions of his confinement. (*Id.*) Separately, Plaintiff alleges that his admission was predicated on a false statement constructed in coordination with Pasquale, and that RWJ personnel produced a psychiatric report characterizing his presentation in a manner he alleges lacked clinical foundation and served as the operative basis for maintaining him in continued involuntary confinement. (Am. Compl. at 14–15.)

Taken as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must, these allegations permit a plausible inference that RWJ did not merely provide medical services in the presence of law enforcement but participated in a coordinated custodial arrangement in which

11

state actors and hospital personnel jointly maintained control over Plaintiff's liberty and bodily integrity. That institutional participation allegedly extended beyond physical custody to the production of medical documentation that served as the basis for the transfer to a psychiatric unit and the continuation of involuntary confinement — a form of joint conduct qualitatively distinct from passive presence in the facility. At this stage, Plaintiff is not required to identify each individual RWJ employee where the pleaded facts plausibly attribute the alleged deprivation to institutional participation in an integrated custodial setting. *See Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993).

Because Plaintiff has plausibly alleged state action, the Court turns to the constitutional claims. As a pretrial detainee, Plaintiff's claims arise under the Fourteenth Amendment's Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979). A detainee may not be subjected to conditions amounting to punishment prior to an adjudication of guilt, nor deprived of liberty interests without constitutionally adequate process. *Id.*; *Zinermon v. Burch*, 494 U.S. 113, 132 (1990).

Plaintiff alleges that he was involuntarily confined without judicial authorization or meaningful procedural safeguards, restrained in handcuffs for an extended period without individualized medical justification, and denied access to counsel, family, and a judicial officer for more than ninety-four hours. (Am. Compl. at 11–17.) Significantly, the hospital's own physician progress notes—submitted as exhibits to the Complaint—contemporaneously record that on Hospital Day 2, Plaintiff was "repeatedly asking about wanting to talk to a lawyer and to call his family," that he denied any psychiatric issues or need for psychiatric treatment, and that he requested evidence justifying his commitment. (Am. Compl. at 20 [Physician Progress Note, 5/14/2020].) Those records establish that RWJ personnel were contemporaneously aware of

12

Plaintiff's invocation of his rights and his denial of psychiatric need, yet the denial of access persisted notwithstanding that awareness. The denial of all access to counsel, family, and a judicial officer for that period implicates multiple constitutional concerns. Prolonged detention without judicial presentment is presumptively unreasonable under the Fourth Amendment. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). To the extent adversarial proceedings had commenced, restrictions on attorney communication may independently implicate the Sixth Amendment. *See Rothgery v. Gillespie County*, 554 U.S. 191, 198–200 (2008). The Third Circuit has likewise recognized that interference with attorney communication may give rise to constitutional injury where it meaningfully burdens access to counsel or the courts. *See Bieregu v. Reno*, 59 F.3d 1445, 1455–56 (3d Cir. 1995), abrogated on other grounds by *Lewis v. Casey*, 518 U.S. 343 (1996). These allegations also state plausible procedural due process violations under the Fourteenth Amendment.

Plaintiff further alleges deliberate interference with prescribed medical care. Specifically, he contends that RWJ failed to provide prescribed thyroid medication during his detention and instead administered haloperidol absent documented clinical justification or informed consent. (Am. Compl. at 13.) The failure to provide prescribed medication, despite knowledge of an existing treatment regimen, states a plausible claim for deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (deliberate indifference may be manifested by intentional interference with prescribed treatment); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (finding deliberate indifference where defendants failed to provide prescribed medication despite known medical need).

The alleged administration of antipsychotic medication without clinical basis or informed consent independently implicates Plaintiff's protected liberty interest in bodily integrity and

13

medical decision-making in custodial settings. *See Washington v. Harper*, 494 U.S. 210, 221–22 (1990) (recognizing significant liberty interest in avoiding involuntary administration of antipsychotic drugs); *Riggins v. Nevada*, 504 U.S. 127, 134–35 (1992) (forcible medication implicates due process and requires medical justification and procedural safeguards). At the pleading stage, these allegations further support a plausible Fourteenth Amendment violation.

Accordingly, Plaintiff has adequately alleged that RWJ, acting in concert with state officials, functioned as a state actor for purposes of § 1983, and that the asserted Fourteenth Amendment violations are plausibly stated. These claims shall proceed past screening.

### E.  *Claims Against Somerset County Jail and Its Personnel*

As a threshold matter, Somerset County Jail is not subject to suit under § 1983 because it is not an independent legal entity but part of the county government. Accordingly, claims asserted against the jail itself are dismissed with prejudice, and the Court construes Plaintiff's allegations regarding conditions of confinement and institutional practices as asserted against Somerset County. *See Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004).[2]

As a pretrial detainee, Plaintiff's conditions-of-confinement claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). The Third Circuit has explained that pretrial detainees are protected from punishment prior to an adjudication of guilt, and their claims are evaluated under the Due Process Clause rather than the Eighth Amendment's cruel and unusual punishment standard. *Id.*; *see also Bell*, 441 U.S. 520, 535–37 (pretrial detainees may not be subjected to

---

[2]    The Amended Complaint does not allege a specific policy, custom, or widespread practice attributable to Somerset County sufficient to support municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Accordingly, no municipal liability claim against Somerset County proceeds at this time.

14

punishment). By contrast, post-conviction claims arising after Plaintiff's September 2022 sentencing are governed by the Eighth Amendment's prohibition on cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 345–47 (1981). Under that standard, conditions violate the Constitution only where they result in the "unnecessary and wanton infliction of pain" or deprive an inmate of "the minimal civilized measure of life's necessities." *Id.* at 347; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff alleges numerous violations by Somerset County Jail personnel. The denial of any attorney contact for over 120 hours following his admission implicates the Sixth Amendment right to counsel and the Fourteenth Amendment's due process protections. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991) (holding that detention beyond 48 hours without a judicial determination of probable cause is presumptively unconstitutional). Restrictions that effectively deny a detainee access to counsel during a critical period of detention may independently violate the Sixth Amendment once adversarial proceedings have begun and may also support a due process claim where they contribute to prolonged or unjustified detention. *See Rothgery v. Gillespie County*, 554 U.S. 191, 198–200 (2008) (right to counsel attaches at initiation of adversarial proceedings); *Bieregu v. Reno*, 59 F.3d 1445, 1455–56 (3d Cir. 1995) (recognizing constitutional implications of interference with attorney communication), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). Accordingly, this claim shall proceed.

The systematic denial of law library access for over two years, particularly where Plaintiff was denied § 1983 forms, paralegal assistance, and meaningful access to legal resources states a plausible claim for denial of access to the courts. To establish this claim, Plaintiff must ultimately demonstrate "actual injury" by showing that the alleged deficiencies hindered efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 349–51; *Monroe v. Beard*, 536 F.3d 198, 205–06 (3d

15

Cir. 2008). The Third Circuit has emphasized that actual injury is not established by mere denial of access to a law library or legal assistance, but rather by showing that the deprivation frustrated or impeded a specific, nonfrivolous legal claim. *Id.* Plaintiff's equitable tolling allegations, however, plausibly establish such injury at the pleading stage: if proven, the alleged law library deprivation caused Plaintiff to miss the applicable two-year § 1983 limitations period, and the loss of a timely opportunity to pursue a nonfrivolous civil rights action constitutes cognizable actual injury under *Lewis. See Lewis*, 518 U.S. at 351–53 (requiring hindrance of nonfrivolous claim); *Oliver v. Fauver*, 118 F.3d 175, 177–78 (3d Cir. 1997) (recognizing access claim where prison conditions allegedly caused loss of ability to litigate); *Peterkin v. Jeffes*, 855 F.2d 1021, 1036–37 (3d Cir. 1988) (actual injury requirement satisfied where systemic deficiencies impede litigation). This claim shall proceed.

Plaintiff's allegation that jail personnel knowingly admitted an inmate infected with COVID-19 to his unit in November 2021 while denying Plaintiff medical care and then placing him in a disciplinary segregation unit states a plausible deliberate indifference claim. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The Court notes that the applicable standard for deliberate indifference claims brought by pretrial detainees may be purely objective following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), though that question need not be resolved at screening. The suspension of Plaintiff's prescribed thyroid treatment for over six months by the jail's medical staff states an independent deliberate indifference claim. *Natale*, 318 F.3d at 582 (finding deliberate indifference where failure to provide prescribed treatment could constitute serious medical need and disregard thereof). These claims shall proceed.

Plaintiff's placement in disciplinary segregation on two occasions in late 2021—without notice, cause, or investigation—raises due process concerns, though whether the conditions

16

imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life" requires factual development. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). This claim may proceed.

The mass cancellations of religious services for more than two years, family visits, phone recreation, and other privileges—where imposed as a blanket restriction rather than a proportionate response to legitimate penological or public health concerns—may implicate Plaintiff's First Amendment and Fourteenth Amendment rights. Prison regulations that burden religious exercise are evaluated under the reasonableness standard set forth in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987), and restrictions on religious practice must be reasonably related to legitimate penological interests. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348–50 (1987). At the pleading stage, Plaintiff is not required to rebut potential justifications or affirmative defenses, including those grounded in institutional security or public health; such issues are properly addressed on a developed factual record. Accordingly, these claims are permitted to proceed for further factual development.

As to Sergeant Garcia specifically, the allegations that he threatened to hang Plaintiff from his feet in a cell and, in concert with a female correctional officer, physically restrained Plaintiff by his shoulders to compel submission to a DNA test state plausible excessive force and coercion claims. Because Plaintiff was a pretrial detainee at the time, this claim arises under the Fourteenth Amendment and is governed by the objective unreasonableness standard. *Kingsley*, 576 U.S. at 396-97; *see also Parkell v. Danberg*, 833 F.3d 313, 326–29 (3d Cir. 2016). These claims proceed against Sergeant Garcia in his individual capacity.

17

### F. Claims Against Attorney Anthony Cowell

Plaintiff alleges that his public defender, Anthony Cowell, violated attorney-client privilege, sought Plaintiff's cell phone password to help police obtain evidence, contacted Plaintiff's family to disclose prosecution evidence without Plaintiff's consent, failed to file any motions, never visited Plaintiff in jail, and repeatedly pressured Plaintiff to plead guilty. (Am. Compl., D.E. 15 at 33–39.)

The threshold defect in these claims is the state-action requirement of § 1983. A public defender does not act under color of state law when performing "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). This is so even though the attorney is publicly paid and appointed by the state. *Id.* at 321. All the conduct alleged—including strategic choices, failure to file motions, communication decisions, and plea advice—falls squarely within the traditional functions of defense counsel. *See Dodson*, 454 U.S. 312, 325 (public defenders do not act under color of state law when performing traditional functions of counsel); *see also Black v. Bayer*, 672 F.2d 309, 320 (3d Cir. 1982) (same). To the extent Plaintiff alleges that Cowell conspired with Pasquale and others to deprive him of constitutional rights, those allegations are conclusory; the Amended Complaint does not plead specific facts showing an agreement or "meeting of the minds" between Cowell and state actors. See *Tower v. Glover*, 467 U.S. 914, 920 (1984) (recognizing § 1983 liability for public defenders only where they conspire with state actors); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178–79 (3d Cir. 2010) (requiring factual allegations showing agreement to sustain a conspiracy claim). Accordingly, Plaintiff fails to state a § 1983 claim against Cowell.

To the extent Plaintiff's claims against Cowell amount to ineffective assistance of counsel, such claims are not cognizable under § 1983 and must be pursued, after exhaustion of state post-

18

conviction remedies, through a petition under 28 U.S.C. § 2254. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The § 1983 claims against Cowell are accordingly dismissed without prejudice.

### G. Claims Against Attorney Michael Policastro

Plaintiff alleges that his retained private counsel, Michael Policastro, was similarly ineffective: he failed to visit Plaintiff in jail, went on extended vacation without advising Plaintiff, failed to answer phone calls for over a year, filed no motions, met privately with prosecution witnesses without Plaintiff's consent, and argued against Plaintiff's position in open court while threatening to abandon the case. (Am. Compl., D.E. 15 at 40–45.)

A privately retained attorney is no more a state actor than a public defender, as retained counsel acts on behalf of the client rather than the government. *Steward v. Meeker*, 459 F.2d 669, 670 (3d Cir. 1972). Indeed, a private attorney, even one rendering services pursuant to a public contract, does not act under color of state law. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (citing *Polk*, 454 U.S. 312, 318). The Amended Complaint contains no non-conclusory facts establishing that Policastro entered into an agreement with any state official to deprive Plaintiff of constitutional rights. The § 1983 claims against Policastro are dismissed without prejudice for the same reasons as those against Cowell.

### H. Claims Against Judge Anthony F. Picheca, Jr.

Plaintiff alleges that Judge Picheca: signed the order granting the State's motion for a buccal DNA test; refused to allow Plaintiff to speak on the record at the February 2, 2021 video conference; declined to act on Plaintiff's motion to remove Cowell; and had a conflict of interest arising from his connections to Pasquale, Somerset County Jail, and RWJ. (Am. Compl., D.E. 15 at 5, 35–36, 39.)

19

As the Court noted with respect to Judge Marino in its prior opinion, judges enjoy absolute immunity from § 1983 damages claims for acts taken in their judicial capacity, regardless of whether such acts are characterized as unfair, erroneous, or controversial. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000). Immunity is overcome only where a judge acts entirely outside his judicial role or in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11-12.

Each of the challenged acts by Judge Picheca were taken in his capacity as the presiding judicial officer in Plaintiff's criminal matter. Signing a court order on a motion in a pending case, presiding over a video conference, ruling on a motion to substitute counsel, and declining to hear Plaintiff on the record are quintessential judicial functions. The conclusory allegation of a conflict of interest does not overcome absolute immunity. *See Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000). Accordingly, the § 1983 claims against Judge Picheca are dismissed with prejudice.

### I. Claims Against Assistant Prosecutor Annemarie Mueller

Plaintiff alleges that Prosecutor Mueller filed a motion for the DNA test based on false statements by Hana Gomes, used witness testimony that she knew to be fabricated, and argued against Plaintiff in a manner that denied him a fair proceeding. (Am. Compl., D.E. 15 at 6.)

Prosecutors are absolutely immune from § 1983 damages liability for acts "intimately associated with the judicial phase of the criminal process," including initiating prosecutions and presenting evidence to a court. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute prosecutorial immunity does not extend, however, to a prosecutor's investigative or administrative functions—that is, acts taken prior to the establishment of probable cause or outside the adversarial process. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-75 (1993).

20

The conduct Plaintiff attributes to Mueller—filing a motion for a DNA test and relying upon witness declarations in judicial proceedings—constitutes advocacy before the court, squarely within the scope of absolute prosecutorial immunity. To the extent Plaintiff contends that Mueller engaged in investigative conduct outside the advocacy function, those allegations are not pled with sufficient factual specificity to plausibly remove the conduct from the scope of prosecutorial immunity at this stage. The § 1983 claims against Mueller are therefore dismissed without prejudice.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court disposes of the Amended Complaint as follows:

The following claims are **DISMISSED WITH PREJUDICE**: (1) any § 1983 damages claims against the State of New Jersey and any injunctive relief claim seeking release or sentence modification, for the reasons set forth in the Court's prior opinion; (2) all § 1983 claims against Judge Anthony F. Picheca, Jr. on the basis of absolute judicial immunity; (3) all claims against Somerset County Jail, as it is not a "person" subject to suit under § 1983; and (4) the freestanding Fifth Amendment Miranda damages claim against Pasquale, as a failure to administer Miranda warnings does not give rise to a § 1983 cause of action under *Vega v. Tekoh*.

The following claims are **DISMISSED WITHOUT PREJUDICE**: (1) the § 1983 claims against attorneys Anthony Cowell and Michael Policastro, because neither is a state actor under § 1983 and Plaintiff's allegations do not adequately plead a conspiracy with state officials; (2) the § 1983 claims against Assistant Prosecutor Annemarie Mueller for conduct falling within the scope of absolute prosecutorial immunity; (3) the "criminal complicity of evidence" claim against Pasquale for alleged suppression of exculpatory evidence obtained from Plaintiff's cell phone; and

21

(4) any standalone Sixth Amendment defense-obstruction theory, which Plaintiff may pursue in habeas proceedings after exhausting state remedies.

The following claims **PROCEED** past screening: (1) Fourth Amendment claims against Pasquale for warrantless arrest, warrantless seizure of personal property, warrantless entry into and search of Plaintiff's apartment, the first warrantless buccal DNA test on May 12, 2020, and the administration of the second DNA test in the absence of counsel and through allegedly coercive means; (2) Fourteenth Amendment claims against RWJ—as a joint actor with state officials—for forced hospitalization without due process, restraint in handcuffs, denial of communication with counsel and family, deliberate indifference to serious medical needs, transfer to a psychiatric unit without consent or diagnosis, and participation in the alleged construction of a false psychiatric report; and (3) Fourteenth Amendment claims against Somerset County personnel, including Sergeant Garcia in his individual capacity, for denial of attorney and judicial access, excessive force in connection with the September 10, 2020 DNA test, denial of access to courts through alleged systemic law library deprivation, deliberate indifference to serious medical needs (including COVID-19 exposure and thyroid medication denial), improper disciplinary segregation, and prolonged suspension of religious services, family visits, and related privileges.

An appropriate Order follows.

_____
**GEORGETTE CASTNER**
**United States District Judge**

Dated: May 21, 2026

22